IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 07-cv-00464-WYD-MEH

ROBERT BODISON,

     Applicant,

v.

ARI ZAVARES, Executive Director, CDOC, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER OF DISMISSAL

---

     Applicant Robert Bodison is a prisoner in the custody of the Colorado

Department of Corrections at the Colorado Territorial Correctional Facility at Cañon

City, Colorado. Mr. Bodison has filed *pro se* an application for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 challenging the validity of his Colorado state court criminal

conviction. In an order filed on April 6, 2007, I directed Respondents to file an answer

to the habeas corpus application. On April 25, 2007, Respondents filed their answer.

On September 28, 2007, I directed Respondents to submit the complete record of Mr.

Bodison's trial. On November 7, 2007, the state court record was delivered to the

Court.

     I must construe the application liberally because Mr. Bodison is not represented

by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be an advocate for a *pro*

*se* litigant.  ***See Hall***, 935 F.2d at 1110.  After reviewing the entire file and the state court record, I find that an evidentiary hearing is not necessary.  For the reasons stated below, the habeas corpus application will be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Bodison was convicted in Denver District Court case number 01CR503 following a jury trial of reckless manslaughter, first degree felony murder, aggravated robbery, and first degree burglary.

> According to defendant's testimony, after engaging in several drug transactions, he and his friend went to the victim's house to buy beer.  The victim let defendant and his friend into the house, and the victim and the friend argued about money.  During the argument, the victim and the friend fired guns at each other.  One shot hit defendant in the shoulder.  Defendant then ran from the house.  Moments later his friend came out of the house, and the two sped away in a car driven by the friend.

> According to the prosecution, on the night of the shooting, the victim and his girlfriend were in bed.  The girlfriend testified that a single intruder, whom she later identified as defendant, entered the house to commit a robbery.  The victim grabbed his gun, and defendant fired at the victim, hitting him five times.  A tenant in the victim's home testified that on that night she heard an argument between the victim and another man and then heard gunshots.

> Again, according to the prosecution's theory, after the shooting defendant left the victim's home and was picked up by his friend.  The police promptly pulled over defendant's friend for speeding.  While the police detained the friend, defendant walked away.  The officers searched the vehicle and found a pistol under the passenger seat, which was used to kill the victim and belonged to defendant's sister.  The police arrested defendant's friend for burglary and murder, but no charges were filed against him.  In addition,

the subsequent use of a cellular phone taken from the victim was traced to defendant.

Defendant stated that after he walked away from the traffic stop, his mother and her husband drove him to a Colorado Springs hospital to get treatment, under an alias, for the gunshot wound to his shoulder. The Colorado Springs police were summoned to the hospital, photographed defendant in bed, and documented his tattoos, some of which were gang-related. Shortly thereafter, defendant left the hospital without having had the bullet removed and without having been discharged. He traveled to other states.

*People v. Bodison*, No. 02CA1139, slip op. at 1-2 (Colo. Ct. App. Sept. 23, 2004) (not selected for publication).

Mr. Bodison was sentenced to life in prison plus thirty-two years. The judgment of conviction was affirmed on direct appeal. ***See id.*** On April 25, 2005, the Colorado Supreme Court denied Mr. Bodison's petition for writ of certiorari on direct appeal. On April 13, 2006, Mr. Bodison filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure. The trial court denied the Rule 35(c) motion on February 5, 2007. Mr. Bodison did not appeal to the Colorado Court of Appeals from the denial of the Rule 35(c) motion.

The instant action was received for filing on February 26, 2007. In the application, Mr. Bodison asserts six claims for relief challenging the validity of his conviction. He claims that:

1. He was denied due process and his right to be free from self-incrimination when the trial court allowed impeachment of his trial testimony with a statement that had been suppressed based on a ***Miranda*** violation.

3

2.    He was denied due process when questioning and arguments by the prosecution shifted the burden of proof to him.

3.    He was denied due process when the trial court erred in excluding relevant testimony that supported the defense theory of the case.

4.    He was denied due process and his rights under the Confrontation Clause when the trial court excluded exculpatory evidence that would have impeached an eyewitness.

5.    He was denied due process based upon the admission of evidence regarding his gang tattoos and as a result of prosecutorial misconduct.

6.    His constitutional rights were violated as a result of cumulative error.

Respondents concede that the instant action is timely filed pursuant to 28 U.S.C. § 2244(d) and that Mr. Bodison has exhausted state court remedies for the claims he is raising. Therefore, I will address the merits of those claims.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Bodison seeks to apply a rule of law that was clearly established by the Supreme Court at the time his or her conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) (Stevens, J., writing for the Court). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412 (O'Connor, J., writing for the Court). If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See id.* at 404-05.

The "contrary to" clause allows a writ of habeas corpus to issue "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. The "unreasonable application" clause allows a writ of habeas corpus to issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See id.* at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

5

federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Bodison bears the burden of rebutting the presumption by clear and convincing evidence.

I "owe deference to the state court's *result*, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id.*

### III.  MERITS OF THE CLAIMS

Claim One

Mr. Bodison first claims that he was denied due process and his right to be free from self-incrimination when the trial court allowed impeachment of his trial testimony with a statement that had been suppressed pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  In support of this claim, Mr. Bodison alleges that, during custodial interrogation and after he had been advised of his *Miranda* rights and had expressed a desire to be represented by counsel, he denied being at the scene of the homicide in

response to continued interrogation from a police detective. Mr. Bodison further alleges that the defense moved to exclude his statements prior to trial and that the motion was granted in part. The trial court ruled that Mr. Bodison's *Miranda* rights had been violated but, because the statements were voluntary, the statements still could be used against Mr. Bodison for impeachment purposes. Mr. Bodison asserts that his statement that he was not at the scene of the crime was introduced by the prosecution to impeach his trial testimony that he was present when the homicide occurred.

It has been clearly established by the Supreme Court that a defendant's statements obtained in violation of *Miranda* may not be used in the prosecution's case in chief, but such statements are admissible for impeachment purposes if their "trustworthiness . . . satisfies legal standards." *Harris v. New York*, 401 U.S. 222, 224 (1971); *see also Michigan v. Harvey*, 494 U.S. 344, 350-51 (1990). The Colorado Court of Appeals applied this clearly established rule and rejected Mr. Bodison's claim that the trial court erred in admitting his statement that he was not present at the scene of the homicide for impeachment purposes. The state court reasoned as follows:

> Here, the trial court suppressed defendant's videotaped statement based on Miranda. The trial court also found, with support in the record, that no promises, undue pressure, or coercion was utilized in an attempt to elicit a statement from defendant. Under Miranda-Olivas, [41 P.3d 658 (Colo. 2001),] these findings are tantamount to a conclusion that the statements were voluntary.

*Bodison*, slip op. at 17.

The state court's legal conclusion, that Mr. Bodison's statement denying his presence at the scene of the homicide was voluntary and could be admitted for

impeachment purposes, was based on the factual determination that no promises, undue pressure, or coercion was used in order to obtain the statement from Mr. Bodison. Mr. Bodison fails to present any evidence, much less clear and convincing evidence, to overcome the presumption of correctness that attaches to the state court's factual determination. Therefore, based on that presumptively correct factual determination, I find that the state court's legal conclusion is not contrary to or an unreasonable application of clearly established federal law. Mr. Bodison's constitutional rights were not violated by admitting his prior, voluntary statement to impeach his contradictory trial testimony. As a result, Mr. Bodison is not entitled to habeas corpus relief on this claim.

Claim Two

Mr. Bodison next claims that he was denied due process when questioning and arguments by the prosecution shifted the burden of proof to him. Mr. Bodison alleges in support of this claim that he testified the homicide was committed by his friend. He further alleges that, during cross-examination of government witnesses, the defense attempted to demonstrate the police conducted a shoddy investigation of the crime scene and evidence collected. Mr. Bodison contends that the prosecution shifted the burden of proof to the defense by suggesting that the defense could have conducted its own investigation of the crime scene and evidence to demonstrate that the crime was committed by defendant's friend. The Colorado Court of Appeals described the factual basis for this claim as follows:

At trial, the prosecution called several police detectives and investigators to testify about evidence collection and testing in this case. On cross-examination, defendant attempted to show that the police conducted a shoddy investigation, for example, that they failed to collect important evidence from the crime scene and failed to test potentially important blood samples and gunshot residue. The prosecution, on redirect and cross-examination of defendant's investigator, inquired into the defense's own investigation of the crime and testing.

Defendant objected to that line of questioning, arguing that it shifted the burden of proof to defendant. The trial court overruled the objections.

***Bodison***, slip op. at 20.

It was clearly established when Mr. Bodison was tried and convicted that the prosecution "must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant." ***Patterson v. New York***, 432 U.S. 197, 215 (1977); ***see also Sullivan v. Louisiana***, 508 U.S. 275, 177-78 (1993). The Colorado Court of Appeals applied this clearly established rule of federal law and rejected Mr. Bodison's claim that the burden of proof had been shifted to the defense. The state court reasoned:

Here, however, in response to defendant's objections, the court reminded the jury at least once that the prosecution had the burden of proof. The jury was also instructed that the prosecution must prove each element of the offense by proof beyond a reasonable doubt. We presume that a jury heeds such instructions. Further, during defendant's recross-examination of a detective and in an attempt to undo any harm caused by the prosecution's implications that the defense's own investigation was shoddy, defense counsel asked: "And in all of that time have you ever known of a case where the defense obtained a second sample on a gunshot

> residue test?"  The detective responded: "I don't particularly
> know of any."

***Bodison***, slip op. at 20-21 (citation omitted).

I find that the state court's resolution of this claim is not contrary to or an

unreasonable application of clearly established federal law.  The jury was instructed and

reminded that the prosecution was required to prove each and every element of the

crimes charged beyond a reasonable doubt in order to find Mr. Bodison guilty.  Absent

an overwhelming probability that a jury will be unable to follow the court's instructions,

which is not present in this action, the jury is presumed to follow the instructions.  ***See***

***Greer v. Miller***, 483 U.S. 756, 767 n.8 (1987).  Therefore, I do not find that the

prosecution's burden of proof was shifted to Mr. Bodison and he is not entitled to relief

on this claim.

<u>Claim Three</u>

Mr. Bodison's third claim is that he was denied due process when the trial court

erred in excluding relevant testimony that supported the defense theory of the case.

The Colorado Court of Appeals explained this claim as follows:

> Defendant presented testimony of a tenant in the
> victim's home about an argument between the victim and his
> girlfriend earlier in the evening prior to the shooting.  The
> prosecution objected on relevancy grounds.  The following
> exchange occurred:
>
>> [DEFENSE COUNSEL]: . . . [The girlfriend]
>> indicated they were fighting because [the other
>> tenants] were living at the house but in fact the
>> fights were about [the girlfriend's] drug use.

> [PROSECUTOR]: Judge, I object to that. That
> is not relevant.
>
> . . .
>
> [DEFENSE COUNSEL]: . . . [Defendant] was a
> drug dealer. The fact that [the girlfriend] used
> drugs would explain why [defendant] would in
> fact go to her residence.
>
> . . .
>
> [PROSECUTOR]: . . . [T]o say that somebody
> used drugs because they had an argument
> with somebody about using drugs is just a
> character assault which is not relevant.
> Counsel cannot show in any way how drugs
> will affect her ability to perceive that night. . . .
> So to go into her past history of using drugs is
> nothing but a character assassination on her

The trial court sustained the objection.

*Bodison*, slip op. at 3. Mr. Bodison contends that evidence of drug usage by the

victim's girlfriend explains why Mr. Bodison, who did not know the victim, would

accompany his friend to the victim's house because he might be able to sell drugs to the

girlfriend. Mr. Bodison further contends that evidence of tension between the victim and

his girlfriend regarding her drug usage bolsters the defense theory that Mr. Bodison's

friend shot the victim because it explains why a volatile argument might have erupted

between the victim and Mr. Bodison's friend. The state court affirmed the exclusion of

the testimony regarding the girlfriend's drug usage on relevancy grounds. The state

court reasoned:

> When the tenant testified, defendant had already
> testified that he and his friend went to the victim's house to

> purchase beer. Defendant did not testify that they went to the victim's house to engage in a drug transaction with the girlfriend, even though he previously testified that he and his friend had engaged in drug transactions earlier that night. Therefore, such testimony would only create an inference with respect to a collateral issue to which defendant had testified to the contrary on direct examination. The trial court did not abuse its discretion in refusing to allow this questioning.

*Bodison*, slip op. at 4-5.

As noted above, Mr. Bodison contends that the trial court's exclusion of this testimony violated his right to due process under the United States Constitution. In this context, a

> denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

*Lisenba v. California*, 314 U.S. 219, 236 (1941).

My review of the transcripts of Mr. Bodison's trial convinces me that the state court's exclusion of evidence regarding drug usage by the victim's girlfriend did not prevent a fair trial. The girlfriend's alleged drug usage does not explain why Mr. Bodison and his friend went to the victim's house because Mr. Bodison testified that he and his friend went to the victim's house to buy beer. Therefore, the state court's rejection of this claim is not contrary to or an unreasonable application of clearly established federal law and this claim also will be dismissed.

<u>Claim Four</u>

Mr. Bodison next claims that he was denied due process and his rights under the

Confrontation Clause when the trial court excluded exculpatory evidence that would

have impeached an eyewitness.

> Defendant contends that the trial court erred and violated his constitutional right to confront the victim's girlfriend and due process of law by not allowing a tenant to testify about her conversation with the victim's girlfriend for impeachment purposes. We agree that the trial court erred, but disagree that it violated defendant's right to confrontation, and we conclude that the error was harmless.

> During the trial, the victim's girlfriend testified that defendant was the shooter. On cross-examination, the girlfriend confirmed some prior statements she made to the police that the shooter's name was "Jay" or "Jason." However, when defense counsel asked the tenant about conversations with the victim's girlfriend concerning alternative shooters in the case, the prosecution objected on hearsay grounds. Defense counsel stated that it went to the "credibility of [the girlfriend] and impeaching her." The court sustained the objection on hearsay grounds.

> . . .

> Here, if the tenant's testimony was offered to prove the truth of the girlfriend's statements regarding an alternative shooter, it was inadmissible hearsay and was properly excluded. However, if the testimony was offered to attack the girlfriend's credibility, as defendant argued in the trial court and now on appeal, the trial court erred by not applying the impeachment rubric.

> Regardless, a ruling admitting or excluding evidence is not reversible error unless the ruling affects a substantial right of the party against whom the ruling is made. If an appellate court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless.

Here, the tenant's testimony would not have had a substantial influence on the verdict or impaired the fairness of the trial. The testimony would have been cumulative of the girlfriend's testimony on cross-examination that she had previously stated that "Jay" or "Jason" was the shooter. In addition, during defendant's closing argument, defense counsel did not rely on the inconsistency in the girlfriend's statement and instead urged the jury not to believe the girlfriend's statement that defendant was the shooter because there was no testimony that the girlfriend saw defendant at the relevant time.

Finally, the victim's girlfriend testified. Therefore, there was no violation of defendant's right to confront her. See Crawford v. Washington, — U.S. —, 124 S. Ct. 1354, 158 L. Ed.2d 177 (2004).

Thus, we conclude that the error was harmless, was not a violation of defendant's right to confront witnesses against him, and does not require reversal.

**Bodison**, slip op. at 5-7 (citations omitted).

As noted above, Mr. Bodison asserts this fourth claim as a violation of both due process and the Confrontation Clause. I first will address the Confrontation Clause claim. It was clearly established when Mr. Bodison was convicted that the Confrontation Clause placed no constraints on the use of prior testimonial statements when the declarant testifies at trial and is available for cross-examination. **See California v. Green**, 399 U.S. 149, 162 (1970); **see also Crawford v. Washington**, 541 U.S. 36, 59 n.9 (2004). As a result, the state court's rejection of Mr. Bodison's Confrontation Clause claim based on the fact that the victim's girlfriend testified at trial is not contrary to or an unreasonable application of clearly established federal law.

In the context of due process, the state court of appeals determined that Mr. Bodison's constitutional rights were violated by the exclusion of the prior statements of the victim's girlfriend regarding the identity of the shooter. However, the state court of appeals also determined that the error was harmless and denied relief.

"[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007). Pursuant to *Brecht*, a constitutional error does not warrant habeas relief unless I conclude that it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. If the evidence is balanced so evenly that I am in grave doubt about whether the error meets this standard, I must hold that the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995). I make this harmless error determination based upon my review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

I have reviewed the state court record and I do not find that exclusion of the impeachment evidence "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. The girlfriend already had admitted under cross-examination that she originally identified the shooter as a man named Jay or Jason. Therefore, admitting evidence of the same statement through the tenant's testimony, at best, would only be cumulative of evidence already heard by the jury. As

a result, I agree with the state court that this error was harmless and Mr. Bodison is not entitled to relief on this claim.

<u>Claim Five</u>

Mr. Bodison's fifth claim is that he was denied due process based upon the admission of evidence regarding his gang tattoos and as a result of prosecutorial misconduct. He specifically alleges that it was unnecessary to admit a police officer's testimony, photographs, and a drawing of Mr. Bodison's gang-related tattoos and gang affiliation and that the prosecution's references to that evidence during closing arguments was misconduct.

> One photograph shows a tattoo on defendant's back of large letters that read "PARK HILL." Below "PARK HILL" are smaller letters reading "MONEY MURDER." A second photograph is of defendant's right arm and shows two masks and small letters that read "GRIN NOW." There were also photographs of defendant lying on a bed covered by a sheet clearly showing his face from which he could be readily identified and not showing any tattoos.

> The drawing, drawn by a Colorado Springs police officer at the hospital, depicts most of the tattoos on defendant's body. The drawing shows: (1) "Grin Now" and "Get Even Later" with the two masks on defendant's right arm; (2) "104 MAFIA" on his stomach; (3) "PARK HILL" and "MONEY MURDER" on his back in large letters; (4) "MONEY GO GETTA" with a "$" sign on his left arm; and (5) two large Asian characters, one on each arm.

> . . .

> At trial, the prosecution initially sought to introduce these photographs, the drawing, and the officer's testimony for the purpose of identifying defendant as the person in the Colorado Springs hospital for treatment of a gun shot wound, and defendant objected. Defense counsel then offered to

stipulate that defendant had been treated for a gunshot wound in the shoulder at the Colorado Springs hospital on the night in question. The trial court did not accept the stipulation, allowed the evidence to be admitted for identification purposes, and gave a limiting instruction.

Subsequently, the prosecutor also offered the photographs and drawing to show the shoulder wound. However, one photograph clearly shows the wound without depicting the problem tattoos, and defendant did not object to that exhibit.

During direct examination the Colorado Springs officer was not asked to make an in-court identification of defendant. On cross-examination, the officer reluctantly identified defendant and stated that the tattoos were not necessary for him to do so.

Then, during cross-examination of defendant, the prosecutor inquired about defendant's denial at the hospital of involvement with gangs. The prosecution argued that the line of questioning was admissible under CRE 608(b) because the gang-related tattoos showed he lied when he denied being in a gang. Defendant objected. The trial court admitted the testimony, but also gave the jury a limiting instruction that the testimony was to be considered only for credibility purposes.

The prosecution also elicited testimony from defendant that he had changed one of his tattoos sometime after the shooting. Defendant objected on grounds that it was not relevant and highly prejudicial. The prosecution argued it went to his credibility because he had previously stated that he was no longer into tattooing. The trial court allowed the testimony.

Finally, during the prosecution's closing arguments, the prosecutor referred to defendant's tattoos several times, stating, after the trial court sustained two objections by defendant:

And those tattoos identify this guy. They
<u>define</u> this guy, and that's what you should use

that evidence for.  Read what they say
because they identify this guy.  <u>They define
him and he chose to put those on his body.  He
chose to be identified with the messages that
those tattoos relate.  That's identification</u>.

(Emphasis added.)

Further, immediately following these comments and
the sustained objections, the prosecutor used the absence of
tattoos on defendant's friend and the proposed alternative
shooter as evidence that the friend was not the shooter.  The
prosecutor stated:

You know, [defendant's friend] doesn't have
any tattoos that identify him.  He [referring to
tattoos] doesn't have the money, the money
sign, the money, go get you, the grin and
getting out.  He doesn't have those things.
He's not defined and I.D.ed in the same way.

***Bodison***, slip op. at 7-10.

The Colorado Court of Appeals determined "that it was an abuse of discretion for

the trial court to reject the stipulation and admit evidence of gang-related tattoos through

the photographs and drawing."  ***Bodison***, slip op. at 12.  The trial court further

concluded that "[t]he prosecutor's remarks in rebuttal closing argument were also

improper and misleading."  ***Id.***  However, the state court concluded "that the error in

admitting the evidence and the mischaracterization of identity evidence by the

prosecutor in rebuttal closing argument were, under the circumstances of this case,

harmless."  ***Id.***

While the tattoos may have had a prejudicial effect,
defendant testified that he was a drug dealer, made a
comfortable living from drug trafficking, and had been
actively engaged in drug transactions that evening.  Further,

defendant, while denying present membership, admitted to previously belonging to a gang. No evidence to the contrary relating to his gang affiliation was offered or admitted. And finally, the court gave a cautionary instruction, which we presume the jury followed.

Further, the impact on defendant's credibility of the fact that he had changed one gang-related tattoo was minimal. The jury heard other evidence which challenged defendant's credibility, including evidence that he used a false identity in his contacts with police, in the hospital, and in the purchase of his airline tickets. In addition, he told the Colorado Springs officer that his gunshot wound resulted from an accident, and he had initially denied being at the crime scene.

Finally, the prosecution's improper statements regarding defendant's gang-related tattoos were a small part of a lengthy closing argument in which the prosecutor otherwise fairly summarized the evidence.

In sum, while the combined impact of the error of admitting the photographs, drawing, and related testimony and the improper argument of the prosecutor make this a very close case, we cannot conclude that reversal is warranted in light of all the circumstances.

*Bodison*, slip op. at 13-14 (citation omitted).

My review of the state court record does not demonstrate that the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. The words and messages depicted in the photographs and drawing of Mr. Bodison's tattoos are gang-related and admission of the photographs and drawing of those tattoos obviously had the potential to unduly prejudice Mr. Bodison. However, the extent of the undue prejudice actually caused by admission of the photographs and drawing of Mr. Bodison's tattoos must be considered in light of his

testimony that he had been a member of a gang, that he was a drug dealer, that he made a comfortable living selling drugs, and that he had been selling drugs on the night in question.  Furthermore, the jury was given a cautionary instruction regarding the use of the potentially prejudicial gang-related evidence that presumably was followed.  ***See Greer v. Miller***, 483 U.S. 756, 767 n.8 (1987).

The prosecutor's improper statements during closing arguments are more troubling.  However, the state court was correct in its observation that the improper statements were only a small part of what otherwise was a lengthy closing argument that fairly summarized the evidence against Mr. Bodison.  When viewed in the context of the entire closing argument and the trial as a whole, I cannot conclude that the prosecutor's improper statements during closing arguments "had substantial and injurious effect or influence in determining the jury's verdict."  ***Brecht***, 507 U.S. at 637.  Therefore, Mr. Bodison also is not entitled to relief on this claim.

Claim Six

Mr Bodison finally claims that his constitutional rights were violated as a result of cumulative error.  "Cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  ***Welch v. Sirmons***, 451 F.3d 675, 710 (10th Cir. 2006).  I apply the same harmless error standard from ***Brecht*** to consider the cumulative impact of the errors that individually were found to be harmless.  ***See id.***  The Colorado Court of Appeals considered the cumulative impact of the

individual errors at Mr. Bodison's trial and concluded that those errors did not cumulatively rise to reversible error.  *See Bodison*, slip op. at 23.

As discussed in this order, Mr. Bodison identifies only two errors at his trial and those errors individually were harmless.  The first harmless error was the exclusion of the prior statements of the victim's girlfriend regarding the identity of the shooter during the course of the tenant's testimony.  The second error was the admission of evidence regarding Mr. Bodison's gang tattoos and the prosecution's improper references to that evidence during closing arguments.  The improper admission of evidence regarding Mr. Bodison's gang tattoos and the prosecution's improper references to that evidence during closing arguments is the more serious error and serves as the baseline for my cumulative error analysis.  Although the exclusion of the prior statements of the victim's girlfriend regarding the identity of the shooter also was a constitutional error, the impact of that error was minimal because the prior statements already had been admitted into evidence during cross-examination of the victim's girlfriend.  Therefore, the impact of the error in excluding that evidence during the testimony of another witness does not add much to the cumulative error analysis.  As a result, I cannot conclude that the cumulative impact of the individually harmless errors at Mr. Bodison's trial "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  Therefore, the cumulative error claim also does not entitle Mr. Bodison to relief in this action.  Accordingly, it is

ORDERED that the habeas corpus application is DENIED and the action is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated: July 18, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge